Good morning. May it please the Court, I'm Jim Bickerton, counsel for Plaintiff Appellant and Patrick Lowther. I'd like to start by emphasizing that this was a Rule 12b-6 motion. And the standard on that seems to have slipped over the years since the Twombly case, in my view, but it is still a 12b-6 motion. The question is, does it fail to state a claim? In this case, the Court below erred because it concluded that we failed to state any claim at all. We have a situation where the document, I forgot to mention I'd like to reserve five minutes for that. All right, watch the clock and I'll try to help you. The Court below simply failed to recognize what we're alleging here is something very different than has been decided by any appellate court in this circuit. The First Circuit has looked at this question. The question isn't, as so many people have argued, whether a trust, a securitized trust, can receive a mortgage assignment after its closing date. The question is, did the asinore have something to assign when it assigned it? Fundamental problem that you'll hear repeatedly in the presentation of the defense is they speak in the passive voice. They say this was assigned and it happened without saying who did what. Fundamentally, we have a situation where the originator of the loan no longer has any interest whatsoever in the loan. The banks have made a lot of money by telling investors that that happened, that these are true sales, that a complete assignment happened years before when they created the trust, and yet they turn around when it's time to go after the defaulting borrower and they say, oh, we got this directly from the originating lender. The two statements cannot both be true. It's unquestionable that that meets every test for unfairness under the Hawaii statute and case law interpreting Chapter 480. So the argument then becomes, well, they could have done it. They could have foreclosed anyway because they held something. Even if they didn't get it from this false assignment, they got it some other way. They got it back in 2006 or 2007. But that really doesn't help them. Since your time is short, I'd like to get a question or two that I have. I was hoping someone would ask me a question. All right. The statute of limitations in Hawaii is four years. Or a UDAP claim. All right. On what date did the statute of limitations begin to run, begin to accrue in this case? Was it the date that the property was noticed for sale, or was it when the auction occurred? And what is your best authority for whatever answer you give? Well, if I'm allowed to cite cases that weren't in my 28J letter, I could give you a recent decision by the bankruptcy judge who sits right where Judge McKeown is sitting. The Judge Farris, in a case called In Re Ho, studied this question. And he concluded that, as Judge Seabright did in Sembillo, that the relevant date is the date of the auction at the earliest. I think that Judge Farris left open that it's actually the date when two things happen after the auction. And the reason I say this is because we're complaining of a harm. We have to, to have a 480 claim. An injury is a necessary element of that claim. And that was one of the major errors that the trial judge made, is saying, oh, it's not an element, it's just a pleading requirement. I still don't know the difference. But because an injury is necessary, the plaintiff has to have lost either title or possession. Those are the two interests that they have in property. Those cannot happen before the auction. All right. The date of the auction. If I could add a little bit more. Under Hawaii law, the foreclosure is not complete or effective unless there is A, the recording of an affidavit, and B, a deed. Let's say it's the date of the auction, which would presumably, you'd know at that point what the sales terms were, and you'd know whether there was an injury, you being the borrower. Yes. Is that right? Yes. And I guess the argument on the other side is, no, no, it's an earlier date, but it could possibly be tolled. What is your response to that? Well, when you get into that, you get into the Samsung case. And we're not really, tolling is our third line of argument. And I always feel if you have to get to tolling, you're on fairly thin ice already if you don't have anything else. We don't really need to. The Samsung case came out after Judge Kobayashi ruled here. I apologize. I have three of these this morning, so they're mixing up a little bit. We're in the same boat. Yes. Well, you have six or seven today, so it's even worse. I have five more on Friday. I'm sorry. I lost my train of thought. And your question was? Well, you answered my question, but I... I think Judge McKeon had a slightly different question. Did you say you wanted to reserve five minutes? I do, if it's possible. But I do have a question. I want to answer your question, though. I have another question as well. Mine really goes to the quitclaim deed. Yes. And if I understand your argument, it's that you're claiming it's an unfair practice to use the quitclaim deed, correct? Yes. All right. And my concern about that, as I read the statute, is there anything in the statute that says you can't use a quitclaim deed? No, there is not. But the Hungate case talks specifically about it didn't reach the quitclaim. No, in fact, it specifically reserved that issue. Well, what had happened was the trial judge agreed with us, so she wouldn't dismiss that claim. So she certified only the dismissal of the unlawful postponement, the unpublished postponement. So they didn't get to reach it, I think. No, but I think that people keep citing the Hungate case. As far as I'm concerned, that's a wash because it didn't decide the issue. So my question is this. Why shouldn't we certify this to the Hawaii Supreme Court so that it's not a footnote, but it's actually a decision under state law, rather than having a federal court decide this important question of state law? We would have no objection to that certification. I would just note that in an unpublished decision, I think that's cited in our 28-J letter, in the Bald case, they remanded the case following. We understand, but that's an unpublished decision, and so we don't really have any controlling authority either from the state of Hawaii or the 9th Circuit. What I was going to say about Hungate is they were very clear that there is this, and they repeated and reiterated what they said in the Condor case when they revived the Vitality of Ulrich case. They said, look, you have a duty to use your best efforts, and if you offer something that doesn't even warrant that you have the authority to sell, you are simply not using your best efforts. So although the statute doesn't expressly require it, it seems to me that it's certainly plausible that it's part of the duty to use your best efforts to get the best price. All right. Do you want to reserve the remainder? I would. Thank you. Good morning, and may it please this honorable court, I'm Blaine Rogers on behalf of U.S. Bank as trustee. Appellant's counsel is here three times today, but he has about somewhere in the range of 200 or so of these types of cases in the Hawaii state and federal courts, and I would propose to this court today that this false assignment theory is in fact the weakest of all the theories, and some of those theories have in fact been validated, as we've seen, and as the court recognizes in Hungate and some of the others. However, this case presents a markedly different picture, and it's one that is answered by existing Hawaii law and is not in any way impacted by the most recent cases, and there are three primary reasons for that. Actually, there's one primary reason, and that is it seeks to give assignments of mortgages force and effect that is not contemplated by either Hawaii statutory or case law. There are three reasons underlying that proposition, and they are these. Number one, the Uniform Commercial Code, which is in effect in Hawaii, recognizes that either a holder or a nonholder in possession with the rights of a holder is entitled to enforce, and it's the entitlement to enforce, as this court has recognized, and I think it is the seminal decision discussing these points in the Veal case. It is the person entitled to enforce that instrument that dictates the enforceability of that note and the mortgage that goes along with it. Number two, Hawaii common law has long recognized, almost as long as ULRIC now, we now know, recognizes the duties of a nonjudicial foreclosing mortgagee. Hawaii case law recognizes, as does others, that the mortgage goes with the note as a matter of law. And then number three, let me add to number two as well, as far as the statutory authority, HRS 50283 does not require assignments of mortgage. There is no statutory requirement that assignments of mortgages be recorded in the state of Hawaii. And then number three, the nonjudicial foreclosure statute, 667-5, which is at issue here, and which is subsequently repealed, as this court I'm sure is aware, didn't just allow a mortgagee, as appellant's briefing would suggest, to foreclose. It specifically says a mortgagee or its successor in interest. So if you take those three legal underpinnings that have existed in Hawaii law and continue to exist in Hawaii law, existed at the time this case was decided, and combine them with two key factual allegations here, which are number one, the concession that the note was transferred via the PSA well before this assignment of mortgage was recorded, as well as appellant's agreement in his mortgage that he did not have to be notified of any transfers. Combine those two factual allegations, which are undisputed, with the three points of law that I just recited for the court. An appellant cannot state any claim. You cannot state a claim that there was a wrongful foreclosure or an unfair practice when the record reflects and the law supports the proposition that that entity was a person entitled to enforce the note under the UCC. To hold otherwise is to toss the uniform commercial code out the window. And we know better than that, because we know, as this court has found, that it is in the Veal case, and I would also offer to the court, I believe, the Second Circuit's analysis in the Rogiman case is also very informative to how these issues should be looked at. The court has raised some issues that I'd like to address with respect to the current cases. The most recently decided, Kondauer, Hungate, those are not applicable because those are different kinds of cases. The theory at the beginning of this case was that the bankruptcy trustee, the liquidation trustee, did not grant authority to assign this mortgage. Well, that disregards the fact that, of course, through the pooling and servicing agreement, which appellant put into the record in opposing our motion to dismiss the First Amendment complaint, that that trustee lacked authority. So that was dismissed. Then he comes back, and in the original complaint, and it's a very difficult to discern complaint, and Mr. Bickerton may object to the plausibility standard, but I would offer to the court, if you try to avail yourself of the type of pleading that was done here, where you don't specifically enumerate your claims and mush everything together, then you can't complain about the courts not necessarily understanding all of the things you're trying to allege. But to the extent it was understood, the initial complaint was clearly predicated on this bankruptcy theory. That's a theory that has been routinely rejected, and I think Judge Gilmour's opinion in the Lizza case, which this court will hear later, adequately explains that. So I don't intend to get into that, and the lower court here didn't get into that in great detail. Counsel, assuming we agree with you on the assignment, did the district court abuse its discretion when it prohibited amendment on Lother's IPEA claim?  I don't believe it abused its discretion with respect to any claims. It was oddly postured procedurally, Your Honor, because, as I was saying, the first complaint alleged the bankruptcy theory. In one subparagraph, it dropped this theory that the bank didn't tell the truth about the path that the loan had actually taken. First amended complaint then brings that theory to the forefront. And that was the scope of the leave that plaintiff was allowed. It was to remedy the initial infirmities in the complaint. He then moves and is granted leave in part to amend. He sort of rejiggers his underlying theory from the first complaint. It was the same thing, basically. That's correct, Your Honor. It was more or less the same thing. It just elevated the one above the other, and it sort of pushed aside the bankruptcy theory. I think that there can be no abusive discretion here because what the proposed second amended complaint did was it really sought to recharacterize this whole case, which goes to my point about Kondower and Hungate, as well as those cases are chilled bidding cases. They have nothing to do with whether someone has the right to enforce the note that was the basis of the foreclosure, which is here. So this court need not be concerned by Kondower and Hungate and the like because those cases have always been about the bank doing things not in conformance with the statute, failing to give notice and saying, hey, look, you owe a duty to do better, and you owe a duty to make sure there's enough people there to encourage active bidding to obtain a reasonable price under the circumstances. That was never the theory here. So in your view, there was never a theory of unfair practice or deceptive practice because a quick claim was being used? Not until the proposed second amended complaint, Your Honor. Okay. So in the proposed second amended complaint, that's on the table. Well, and I would point out to both your question and Judge Nelson's questions that the quick claim theory existed years before he tried to amend it in the second amended complaint. And what I think you see under Rule 15 is a clear undue delay, and we know that theory existed. Why? Because this court has seen it in Lima and Guibo and Bald, which were all cases brought in 2012. So what I see from Pellin's pleadings is a concession on the one hand that the bankruptcy theory was not going to work. Then he tries the second time around to propose this, oh, you have to tell me all the steps that the loan took in the assignment, notwithstanding the UCC, notwithstanding Hawaii common law recognizing that the mortgage travels with the note. And instead, we're going to go back to these other ones that seem to have gotten more traction. So your position is that the second amended complaint was too late in the game? I believe so. I believe an analysis under Rule 15 makes it clear that the judge was well within her discretion, particularly given the limited scope of leave that she granted, to stay within the bounds. I do not think Rule 15 contemplates changing the theory. You don't think we need to even get to the Bald and other related cases? I don't think so. I think existing Hawaii law, as informed by this court's decision in Veal and the Second Circuit's decision in Rajaman, provides the guideposts for how this court should decide, which is if you're entitled to enforce and if your theory of the case establishes, at minimum, that my client was a person entitled to enforce the note at the time the foreclosure was conducted, then you cannot have a wrongful foreclosure claim and you cannot have an unfair. How does it violate public policy if it's in compliance with the law? If your analysis is correct, the statute of limitations issue just drops out? Well, I think, as this court is aware, it can affirm on any basis on de novo review. I think the statute of limitations question is a complicated one. In preparing for this argument, I went and tried to find new Hawaii appellate case law on 480-24, and I can assure this court, to the extent my research skills remain decent, there is nothing beyond what the federal court has really provided all of the input with respect to that statute of limitations. What you're left with is the Sambilo decision, and then at the contrary position that was taken by Judge Kobayashi here, the Hawaii appellate court, around the same time that Sambilo was decided, did issue a decision. It's the Intermediate Court of Appeals. I did not provide a letter, once again, stating that it accrues at the time of the violation. I don't want to disagree with Judge Seabright's decision, but I don't think the court needs to reach the statute of limitations question to decide this case on behalf of our client. Thank you. I see I have no more time. It's now running up. Red means stop. Thank you. Thank you. Just like in the traffic light. All right, you have some time remaining. Addressing this question of the UCC, the complaint, as amended, alleges that they did not possess an endorsed note and the assignment was false. They then try to say, well, we got it through the securitization process back in 2006 through all this chain, so we did have it. The problem, again, as I said at the outset,  and it's not apparent from the complaint. You certainly can't offer SEC documents to prove the truth of the matter on a Rule 12 motion. I'd like to address also the question of what he calls undue delay. The undue delay is in the briefing schedule of the lower court. This is a Rule 12 motion brought instead of an answer. We responded to it. The judge gave us leave to amend, and we amended. How long this takes is not a function of the plaintiff. You're talking about the Second Amendment, not the First Amendment. The First Amendment was actually at the outset. I don't think they even responded to that. It was done right away. That was the first one done. If I recall, and I may be mixing my cases up, that was done within a very short time after the complaint was filed and before anyone responded to it. The motion to dismiss was for the First Amendment complaint, and then the judge gave us leave in hearing that motion to do the second. Discovery hadn't even started. I don't think we even had the scheduling conference with the magistrate. And if we did, nothing had flowed from it. So we have a situation where we're being penalized because the court takes forever to decide these things. But I don't think that anyone can say that there was undue delay because we didn't raise it in the first instance. We were focused on what we thought was the wrongful assignment claim, and the judge's position was, well, if you have something else, put it in. And we did have that. We've raised it in other cases, and it's been upheld on appeal. The other point I wanted to make very briefly is that, again, we have this problem that was exposed in Compton v. Countrywide that people are not treating the UDAP statute separately from other legal requirements. And we must still ask the question, no matter what standing rules you apply or no matter whether you held a note, if you put a false document in the public record and use that as an instrument of your foreclosure, is it an unfair and deceptive practice? That's not decided by the UCC or by anything else. That's decided by a jury that decides whether it's unfair. Thank you. Thank you. Case just argued is submitted. Thank you for your argument. Lothert v. U.S. Bank. We'll next hear argument in Swigert v. U.S. Bank in MERS. Thank you.
judges: Schroeder, D.W. Nelson, McKeown